UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HUVILIALDO HERNANDEZ-MUNOZ, | CASE NO. C26-964-KKE |
| Petitioner(s), | ORDER GRANTING HABEAS PETITION |
| v. | |
| BRUCE SCOTT, et al., | |
| Respondent(s). | |

Petitioner, a native and citizen of Mexico, challenges his detention at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington under 28 U.S.C. § 2241.  Petitioner has been living in the United States since 2000.  In 2017, Immigration and Customs Enforcement ("ICE") placed Petitioner on an order of supervision.  During a regular check-in with ICE in September 2025, ICE re-detained Petitioner but never notified him of the reasons why his order of supervision was being revoked.  Nor did it give him an opportunity to explain why he should not be detained, much less present evidence to that effect.  Petitioner requests immediate release, arguing (among other things) that his re-detention violated his right to due process because ICE failed to follow its own regulations in effectuating his re-detention.  Dkt. No. 1.  The Government[1] opposes the petition.  Dkt. No. 4.

---

[1] This order refers to Respondent U.S. Department of Homeland Security Secretary Markwayne Mullin generally as "the Government."  Mullin is substituted for his predecessor, Kristi Noem, pursuant to Federal Rule of Civil Procedure 25(d).

ORDER GRANTING HABEAS PETITION - 1

For the following reasons, the Court agrees with Petitioner that the Government failed to follow its own regulations and finds that Petitioner's detention is not only unlawful under the regulations but also violates his constitutional right to due process. Accordingly, the Court will grant the habeas petition and order the Government to release Petitioner from custody.

## I.   BACKGROUND

Petitioner states that he first came to the United States in 1981, when he was ten or eleven years old. Dkt. No. 1 at 3. His first interaction with immigration officials occurred on May 1, 2000, when Petitioner entered the United States without inspection, was apprehended by U.S. Border Patrol, and voluntarily departed the following day. Dkt. No. 5 ¶ 4. A week later, Petitioner sought admission to the United States at the San Louis port of entry in Arizona using another person's permanent resident card. *Id.* ¶ 5. Petitioner admitted being the person apprehended a week earlier and was processed for expedited removal and removed later that day. Dkt. Nos. 6-1, 6-2. Department of Homeland Security records indicate he reentered the United States again on or about May 20, 2000. Dkt. No. 6-4.

In 2014, while in the United States, Petitioner applied for asylum. Dkt. No. 1 at 3. Three years later, ICE summoned Petitioner to its office in Portland, Oregon, where an officer served him with a document reinstating his expedited removal order from May 2000. Dkt. No. 1 at 4, Dkt. No. 5 ¶¶ 7–8, Dkt. No. 6-4. In doing so, ICE relied on 8 U.S.C. § 1231(a)(5), which provides that, if the Attorney General finds a noncitizen "has reentered the United States illegally after having been removed, … the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed[.]" A noncitizen whose removal order is reinstated under this provision "is not eligible and may not apply for any relief under" the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1231(a)(5). Accordingly, Petitioner's asylum application was denied. Dkt. No. 1 at 4. However, because Petitioner expressed a fear of removal to Mexico,

ICE referred him to U.S. Citizenship and Immigration Services ("USCIS") for a reasonable fear interview.  Dkt. No. 5 ¶ 8.

Upon reinstating his removal order, ICE released Petitioner pursuant to an order of supervision ("OSUP").  *Id.*  The OSUP required Petitioner to report to ICE periodically, which Petitioner did on a regular basis.[2]  Dkt. No. 6-5 at 3.  Petitioner maintains (and the Government does not dispute) that he complied with his reporting conditions and was granted lawful employment authorization.  Dkt. 1 at 4.  On September 22, 2025, ICE arrested Petitioner during a scheduled check-in at ICE's office in Kennewick, Washington.[3]  Dkt. No. 5 ¶ 11.  ICE's arrest record states simply that Petitioner's "immigration case was reviewed, and it was determined that he was amenable to arrest."  Dkt. No. 6-3 at 3.  A declaration by ICE Deportation Officer Gary Ingram states that ICE "placed Petitioner into custody per Assistant Field Office Director[.]"  Dkt. No. 5 ¶ 11.  Petitioner was asked about his citizenship status, military service, gang involvement, and employment authorization (Dkt. No. 6-3 at 3) but apparently never notified of the reasons why his OSUP was being revoked or given an opportunity to respond or submit evidence relevant to the revocation.  *See* 8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)(3).

About two weeks after his arrest, USCIS interviewed Petitioner and determined he had no reasonable fear of removal to Mexico that would entitle him to protection.  Dkt. No. 6-6.  Petitioner requested review by an immigration judge ("IJ") (*see id.*), and an IJ subsequently affirmed the negative fear determination (Dkt. No. 6-7).[4]  That decision is now the subject of a petition for

---

[2] ICE Deportation Officer Gary Ingram states that Petitioner missed one appointment, in July 2025, though the Government does not claim that this contributed to its decision to eventually re-detain Petitioner.  Dkt. No. 5 ¶ 10.

[3] The petition states that Petitioner was taken into custody on October 14, 2025.  Dkt. No. 1 at 1.  ICE records, however, indicate that the correct date is September 22, 2025.  Dkt. No. 6-3.  In any event, the outcome of this case does not depend on which of these dates is correct.

[4] For reasons that are unclear to this Court, the Government redacted the entirety of the IJ's reasoning supporting her decision, despite the document already being filed under seal.  Dkt. No. 6-7.

ORDER GRANTING HABEAS PETITION - 3

review pending before the Ninth Circuit. Dkt. No. 5 ¶ 16. Just over a month after his arrest, the Ninth Circuit issued a stay of removal. *Id.* ¶¶ 17, 19. Petitioner has also filed a petition for immigration relief under the Violence Against Women Act, which is currently pending with USCIS. Dkt. No. 1 at 5. He has been detained since September 22, 2025.

Petitioner filed his habeas petition on March 21, 2026. Dkt. No. 1. That petition is now fully briefed and ripe for consideration. *See* Dkt. Nos. 4, 7.

## II.    DISCUSSION

### A.    Legal Standard

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Where a procedure is set forth in an agency's regulations in order to protect a fundamental constitutional right such as due process, and the agency fails to follow that regulatory procedure, courts have found that this failure constitutes a due process violation. *See, e.g.*, *Constantinovici v.*

ORDER GRANTING HABEAS PETITION - 4

*Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("It is well-established that government agencies are required to follow their own regulations. … Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" (quoting *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025))).

**B.      The Government's Failure to Follow Its Regulations in Re-detaining Petitioner Violated His Constitutional Right to Due Process.**

Noncitizens subject to a removal order, such as Petitioner, may be released from detention under 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13.  These regulations describe the procedure by which release can be revoked if the noncitizen violates a condition of release, if there is a significant likelihood of removal "in the reasonably foreseeable future," or if revocation is in the public interest.  8 C.F.R. §§ 241.4(l), 241.13(i).

The regulations also provide that "[u]pon revocation" of a release order, a noncitizen "will be notified of the reasons for revocation of his or her release" and will be afforded an initial informal interview "promptly after his or her return to … custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. §§ 241.4(l)(1), 241.13(i).  During that interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she will be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i).  These provisions are "intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release[.]'" *Constantinovici,* 806 F. Supp. 3d at 1163.

Here, the Government concedes that 8 C.F.R. §§ 241.4(l) and 241.13(i) govern Petitioner's re-detention.  Dkt. No. 4 at 4–5.  Yet Petitioner received no notice of the reasons for his release

ORDER GRANTING HABEAS PETITION - 5

revocation before or at the time of his re-detention, nor has he received an informal interview as required by the regulations.  Indeed, the record does not reflect that ICE officers even told Petitioner why he was being arrested.  *See* Dkt. No. 6-3.

The Government offers no justification or explanation for ICE's failure to comply with its own regulations.  Instead, it simply reiterates that "Petitioner is subject to a reinstated order of removal" and argues that "[d]ue process does not mandate a pre-detention hearing here."  Dkt. No. 4 at 7–8.  But the Government is not relieved of its obligation to follow the law in effectuating Petitioner's detention simply because it may have had the authority to detain him.  *See Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 157 (W.D.N.Y. 2025) ("[T]he mere fact that the government has the authority to detain someone does not mean that it may do so in any manner it chooses, without affording due process.").  And the Government's argument that a pre-deprivation hearing was not required fails to address the more fundamental defect that ICE apparently bypassed the basic requirement that it provide notice and an informal interview when revoking a noncitizen's OSUP.

Because it is undisputed that federal agencies must follow their own regulations and that the Government has not done so here, the Court concludes that Petitioner's detention is unlawful and violates his constitutional right to due process.  *See Constantinovici,* 806 F. Supp. 3d at 1164.  The appropriate remedy for the violation of Petitioner's constitutional rights is release.  *See Ceesay*, 781 F. Supp. 3d at 166 ("[B]ecause ICE did not follow its own regulations in deciding to re-detain [petitioner], his due process rights were violated and he is entitled to release.").  The Court will grant the habeas petition on this basis and declines to address the remaining grounds listed in the petition.[5]

---

[5] The Court observes that release would also be warranted by the unlawfully prolonged duration of Petitioner's detention.  The INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal.  *Zadvydas*, 533 U.S. at 699.  Petitioner has now been detained for seven months—well over the "presumptively reasonable" six-month period for detention following a removal order.  *Id.*  And the Government neither claims to have procured a travel document for him nor makes any other effort to show that his removal is

ORDER GRANTING HABEAS PETITION - 6

### III.   CONCLUSION

For these reasons, the Court GRANTS Petitioner's habeas petition.  Dkt. No. 1.

1.   The Government is ORDERED to release Petitioner from custody under the conditions of release previously imposed, no later than April 24, 2026.  Any future re-detention must comply with 8 C.F.R. § 241.13(i) and 8 C.F.R. § 241.4(l).

2.   No later than April 27, 2026, the Government shall file a notice confirming that Petitioner has been released from custody.


Dated this 23rd day of April, 2026.

Kymberly K. Evanson
United States District Judge

---

reasonably foreseeable, beyond the conclusory assertion that Petitioner "is in an expedited process for individuals" with reinstated removal orders.  Dkt. No. 4 at 9.  Indeed, the Government concedes that Petitioner cannot currently be removed as he is subject to a stay of removal.  *Id.*

ORDER GRANTING HABEAS PETITION - 7